# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs January 7, 2014

## BERNARD FRAZIER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 10-03359      J. Robert Carter, Jr., Judge

**No. W2013-00187-CCA-R3-PC  -  Filed April 10, 2014**

The petitioner, Bernard Frazier, appeals the denial of his petition for post-conviction relief, arguing that he received ineffective assistance of counsel and that his guilty pleas were not knowingly and voluntarily entered. After review, we conclude that the petitioner received effective assistance of counsel but that his guilty pleas were not knowingly and voluntarily entered. As such, we reverse the judgment and remand to the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Remanded**

ALAN E. GLENN, J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR. and ROGER A. PAGE, JJ., joined.

Warren P. Campbell, Memphis, Tennessee, for the appellant, Bernard Frazier.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Amy P. Weirich, District Attorney General; and Paul Goodman, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

The petitioner was charged in the Shelby County Criminal Court with two counts of attempted first degree murder, two counts of employing a firearm during a felony, one count of aggravated robbery, two counts of possession of a controlled substance with the intent to sell, and two counts of possession of a controlled substance with the intent to deliver. On July 18, 2011, pursuant to a plea agreement, the petitioner pled guilty to two counts of attempted first degree murder and was sentenced to twenty-three years on each count, to be

served concurrently to each other in the Tennessee Department of Correction and concurrently to a sentence imposed in the United States District Court for the Western District of Tennessee. The record shows that on July 14, 2011, four days before entering his plea in state court, the petitioner pled guilty to three counts of unlawful possession of a firearm in violation of an order of protection, unlawful possession of a stolen firearm, and unlawful possession with the intent to distribute cocaine in federal court and was sentenced to an effective term of 276 months.

At the plea submission hearing, the State informed the court that the petitioner was entering a plea as follows:

> He's pleading guilty in Indictment 10-03359, Count 1, criminal attempt first degree murder. It's an A felony, twenty-three years in the Tennessee Department of Correction.
>
> He's also pleading guilty under Count 2 of that same indictment, criminal attempt first degree murder as charged, twenty-three years in the Tennessee Department of Correction.
>
> All other counts under that indictment will be nol prosed [sic] at no cost. That is to run concurrently with -- those two counts run concurrently with one another and also to the [petitioner]'s federal case.

The State then summarized the facts it would have presented had the case gone to trial:

> [O]n the date alleged in the indictment[,] undercover officers were working in the area of 3331 Howard, Memphis, Tennessee, when they met [the petitioner] and Michael Young, a third co-defendant, and met them in front of 3331 Howard in Shelby County when [the petitioner] and Mr. Young pulled out handguns and began to rob one of the undercover officers.
>
> They took his [s]ervice revolver and his phone. [The petitioner] told Mr. Young to go through his pockets. At some point they found a recording device, [the petitioner] indicated that he was a police officer.
>
> The undercover officer took off running at that point. [The petitioner] told him he was going to blow his ass off. He began firing shots at the undercover officer in the direction of his head and his ass. He eventually dove into a ditch, played dead. At that point Mr. Young and [the petitioner] turned

-2-

on the other officer who was still in the vehicle and began firing shots at him. He was also able to escape.

Subsequently to all this officers with the Undercover Operations Unit did find Mr. Young and [the petitioner].  They did find the handgun that was taken from the officer in addition to the bullets, and his cell phone.

The defense stipulated to the facts and asked the court to accept the negotiated plea agreement.

The trial court then explained to the petitioner that by pleading guilty, he was waiving the right to a jury trial, the right to confront his accusers, the privilege against compulsory self-incrimination, and the right to an appeal.  The court queried the petitioner about the interplay between his state and federal cases:

Q:      You understand we actually had you set for a jury trial in a couple of weeks if you wanted one, but we've been holding this because your attorney has wanted -- you would be able to plead guilty in Federal Court first and then plead guilty in this so it could be run concurrently with that.  Is that your understanding?

A:      Yes, sir.

The court asked the petitioner whether he had been threatened into pleading guilty or was doing it of his own free will and whether he had any further questions about pleading guilty. The court then questioned the petitioner about his trial counsel as follows:

Q:      I mean, [counsel] has been on your case from the beginning, is that correct?

A:      Correct.

Q:      And did he represent you in Federal Court as well or did he coordinate with the people that were handling that over there?

A:      He coordinated.

Q:      Okay.  So, you know, there's no question in your mind this is what you think you need to do?

A:   Yes, sir.

The court found that the petitioner's pleas were knowingly, voluntarily and intelligently entered. As such, the court found the petitioner guilty as charged in counts one and two of the indictment and sentenced him to concurrent twenty-three-year sentences "in the Tennessee Department of Correction as a Range I standard offender." The court also ordered that "these be allowed to be served . . . concurrently with [the petitioner's] Federal case which is 10-20134[.]"

On July 27, 2012, the petitioner filed a *pro se* petition for post-conviction relief and, following the appointment of counsel, an amended petition was filed on October 4, 2012. In his petitions, the petitioner argued, among other things, that he received ineffective assistance of counsel and that his guilty pleas were not knowingly and voluntarily entered because he was led to believe that his state sentences would be served concurrently with his federal sentences in federal custody.

At the post-conviction hearing, the petitioner testified that trial counsel was appointed to represent him at trial. He said that he only talked to counsel on court dates and one time in jail. He was not provided with a discovery packet in his case, but he did receive the discovery from his co-defendant's case after he pled guilty. The petitioner maintained that "if I would have got my discovery pack, or [counsel] would have questioned the witness, I believe that I would have had a better outcome on the case[.]"

The petitioner testified that he believed he would have a better outcome with a trial, and he advised counsel of his desire to take his case to trial. However, counsel did not want the petitioner to go to trial, and the petitioner told counsel that he would consider entering a plea if he "could do [his] time in the Feds, or [he] sign[ed] for [his] Fed time first." The petitioner had pending charges in federal court stemming from the same underlying facts. The petitioner's state court case was continued so he could enter a plea in his federal court case first. He entered a blind plea in federal court and received a twenty-three-year sentence.

The State offered the petitioner a plea for a twenty-three-year sentence concurrent with his federal sentence. However, the petitioner testified that counsel told him that as part of the plea agreement, he would be able to serve his sentence in federal custody. He recalled that counsel told him that as soon as he signed the plea agreement "[he would] be in the Feds and they [would] come pick [him] up in the next couple of days." The petitioner affirmed that it was his understanding he would be taken directly into federal custody upon signing the plea agreement in state court. The petitioner testified that he would not have pled guilty had he known that he would serve his sentence in state custody. He was presently housed in the Hardeman County Correctional Facility, a state penitentiary.

-4-

The post-conviction court questioned the petitioner regarding his understanding of his plea agreement. Asked where the federal court sentenced him, the petitioner stated, "They said they [were] working something out with my State Lawyer, that he was supposed to [have] been making some arrangement for me to come to the Feds." The court asked the petitioner: "What arrangements? What I don't understand is what arrangements do you think that your Lawyer could make? He doesn't run the Federal Government. I couldn't send you to Federal Prison." The petitioner responded, "Me not knowing then I was thinking that he had the power to do that, that's what he told me he was going to do. . . . [I]f I would have kn[own] that, then I would have just took my chances, elsewhere. But, that is what was told to me." The petitioner acknowledged that if he were granted relief, he could be convicted at trial and could receive a far greater sentence on all nine counts. He also acknowledged that all the counts could run consecutively to each other and to the federal sentence.

Trial counsel testified that "for a great deal of [his] representation [the petitioner] wanted to go to trial." However, counsel explained to the petitioner that "[h]e could have been looking at well over eighty years" if he were convicted on all counts at trial. Counsel's best estimate was that the petitioner would receive at least thirty-five years after a trial. Counsel said that he delivered a discovery package to the petitioner, and they went over the petitioner's and his co-defendants' statements to police, as well as the transcript of the preliminary hearing.

Counsel testified that he had numerous meetings with the petitioner, the state prosecutors, and the petitioner's federal counsel, and after "talking about what the possible outcomes were at trial and what kind of offer he was getting from the State, [the petitioner] decided to enter a guilty plea." Counsel stated that he thought the likelihood of the petitioner's being convicted if he went to trial "was pretty great" because the petitioner had given a statement to police in which he admitted to planning the robbery and being armed. Even though the petitioner never admitted to firing shots, one of the undercover officers testified at the preliminary hearing that the petitioner had fired shots and the petitioner could also be found guilty based on a theory of criminal responsibility for the actions of his co-defendants.

Counsel testified that he did not tell the petitioner that he would be housed in the federal system as opposed to the state system. Counsel said that he had "numerous conversations" with federal counsel so he "would be more aware of how sentencing would work with the Feds and here and State Court." According to counsel, he told the petitioner "that there was no guarantee that the time would be run concurrent, unless the Federal plea was done[] first and there was no communication about where he would be housed." Counsel stated that he "coordinated extensively" with federal counsel and recalled having a jailhouse meeting with the petitioner and federal counsel. During that meeting, the topic

of where the petitioner would be housed did not come up. Counsel recalled that the petitioner talked about where he would be housed in the custody room on the day of the plea. Counsel said that he told the petitioner that how and where he would be housed was entirely up to the federal authorities.

At the conclusion of counsel's testimony, the State introduced judgments of conviction for co-defendant Michael Young. The judgments revealed that Young pled guilty to two counts of attempted first degree murder and one count of aggravated robbery, and he received a total effective sentence of forty years.

The post-conviction court entered a written order denying the petition on December 7, 2012. The court found that review of the transcript of the guilty plea hearing showed that the petitioner's sentence was to be served in the Tennessee Department of Correction. The court noted that "[i]t was clear that it was to be served concurrently [with] . . . his federal conviction, but no representations were made at the plea indicating that Petitioner would serve his time anywhere but Tennessee's Department of Corrections." The court also noted that the petitioner was asked if he had any questions about the terms of his plea and that he did not. The court concluded that "[t]his is not a case where a representation was made, that was relied upon by Petitioner, which was then reneged upon after the entry of a plea. The record clearly shows a sentence to the Tennessee Department of Corrections." The court also found that the petitioner's allegations that his counsel was ineffective had "a similar shortage of proof."

## **ANALYSIS**

On appeal, the petitioner argues that he received ineffective assistance of counsel in conjunction with his guilty pleas because counsel led him to believe that he would serve his state and federal sentences concurrently in federal custody. He also argues that his pleas were not knowingly, intelligently, and voluntarily entered for the same reason. As detailed above, the post-conviction court rejected the petitioner's claims that he received ineffective assistance of counsel and that his guilty pleas were not knowingly, voluntarily, and intelligently entered. We conclude that the record supports the determination that the petitioner received effective assistance of counsel. However, we cannot conclude that the petitioner's guilty pleas were knowingly and voluntarily entered.

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2012). The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Id. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the

findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the post-conviction court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a post-conviction court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he or she would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

At the evidentiary hearing, counsel testified that he did not tell the petitioner that he

would be housed in the federal system as opposed to the state system. Counsel recalled that on the day of the plea, the issue about where the petitioner would be housed was brought up, and counsel told the petitioner that the decision was entirely up to the federal authorities. Counsel also testified that he had numerous meetings with the petitioner, and the petitioner decided to plead guilty after they discussed the possible outcomes of a trial and the terms of the State's offer. Counsel believed the petitioner's potential exposure on the charges ranged from thirty-five to more than eighty years. Counsel believed that the petitioner's likelihood of being convicted after a trial was "pretty great" because the State's case included a statement by the petitioner admitting that he had planned the robbery and that he was armed.

The post-conviction court implicitly accredited counsel's testimony in noting that "[t]rial counsel flatly denie[d] that he guaranteed or assu[r]ed Petitioner that he could serve his sentence in any particular prison system." Accordingly, the proof does not support the petitioner's allegation that counsel misled him on the terms of the plea agreement. Any failings in the fulfillment of the terms of the petitioner's plea agreement were not due to any incompetency in counsel's advice.

However, with regard to the knowingness of the petitioner's pleas, we are constrained to reach a different conclusion. Before a guilty plea may be accepted, there must be an affirmative showing in the trial court that it was voluntarily and knowingly entered. Boykin v. Alabama, 395 U.S. 238, 242 (1969); State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977). This requires a showing that the defendant was made aware of the significant consequences of the plea. State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999) (citing Mackey, 533 S.W.2d at 340). A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904. If a plea of guilty is based on a misrepresentation, including unfulfilled or unfulfillable promises, then the guilty plea cannot stand. See Brady v. United States, 397 U.S. 742, 755 (1970).

From the testimony at the guilty plea and post-conviction evidentiary hearings, it is clear that the intent of the state court plea agreement was that the sentences be served concurrently with the petitioner's previously imposed federal sentences. Although the petitioner additionally alleges that he believed his sentences would be served in federal custody, such is not supported by the judgments, the testimony from the guilty plea hearing, or the testimony of counsel at the evidentiary hearing. However, turning back to the issue of concurrence with the federal sentence, the problem with the petitioner's present incarceration in state custody is not so much that he is in a state prison contrary to his wishes but that there is no guarantee that upon completion of his term he will not be taken into

federal custody and required to serve his entire federal sentence. The petitioner's federal judgment mentions nothing of concurrence with the state sentence because it had yet to be imposed at that time and lists the place to be incarcerated as the United States Bureau of Prisons. The petitioner could end up in effect serving a consecutive sentence, which was obviously contrary to his intent in pleading guilty.

Panels of this court have addressed similar scenarios and reached the same result. See Joseph T. Faulkner v. State, No. W1999-00223-CCA-R3-PC, 2000 WL 1671470 (Tenn. Crim. App. Oct. 17, 2000); Derrick E. Means v. State, No. 02C01-9707-CR-00248, 1998 WL 470447 (Tenn. Crim. App. Aug. 13, 1998); see also James L. Crawford v. State, No. E2010-00425-CCA-R3-PC, 2011 WL 1745187 (Tenn. Crim. App. May 9, 2011), perm. app. denied (Tenn. Aug. 25, 2011); Andre Wilson v. State, No. W2001-02442-CCA-R3-PC, 2002 WL 818260 (Tenn. Crim. App. Apr. 17, 2002), perm. app. denied (Tenn. Oct. 7, 2002) (Hayes, J., dissenting); Lucious Allen v. State, No. W2000-02320-CCA-OT-PC, 2001 WL 1381360 (Tenn. Crim. App. Nov. 2, 2001). Although the State attempts to distinguish these cases from the present case because the state court judgments, plea agreements, etc. designated that the state sentences were to be served in federal custody and the petitioner's judgments listed Tennessee Department of Correction, we cannot agree that such distinctions render the petitioner's pleas knowing and voluntary. Upon completion of the petitioner's state sentence, he would have no avenue for forcing the federal government to give him credit for time served in a state penitentiary when such was not on his federal judgment. As noted by this court in Derrick E. Means:

> The Tennessee Rules of Criminal Procedure do provide for concurrent service of state and federal sentences if explicitly ordered by the trial court. Tenn. R. Crim. P. 32(c)(2); State v. Graham, 544 S.W.2d 921, 922 (Tenn. Crim. App. 1976). While authorized by the rule, the implementation of concurrent state and federal sentences has proven to be difficult. See State v. Hun, 197 W. Va. 729, 478 S.E.2d 579, 582 (W. Va. 1996). The practical problems with the rule are as a result of dual sovereignty. Neither sovereign controls the other's proceedings.

1998 WL 470447, at *5.

The concurring opinion in Del Guzzi v. United States, 980 F.2d 1269 (9th Cir. 1992), summarizes the issue:

> State sentencing judges and defense attorneys in state proceedings should be put on notice. Federal prison officials are under no obligation to, and may well refuse to, follow the recommendation of state sentencing judges that a prisoner

be transported to a federal facility. Moreover, concurrent sentences imposed by state judges are nothing more than recommendations to federal officials. Those officials remain free to turn those concurrent sentences into consecutive sentences by refusing to accept the state prisoner until the completion of the state sentence and refusing to credit the time the prisoner spent in state custody.

Id. at 1272-73.

Because the promise of concurrent sentences was a direct inducement for the petitioner's guilty pleas, we cannot conclude that the pleas were knowingly and voluntarily entered.

Turning to the appropriate remedy, we see no reason to depart from this court's reasoning in Derrick E. Means, 1998 WL 470447, and therefore adopt that holding in determining what relief should be granted in the present case. In Derrick E. Means, the court advised:

Fashioning relief for the petitioner will take the combined good faith efforts of all involved. The parties are first encouraged to make every effort to fulfill the intent of the plea bargain. Specific performance may, however, be impossible to effectuate. Both defense counsel *and* the district attorney's office, while taking steps to preserve the integrity of the state sentence, should contact the federal authorities and determine whether the federal authorities would be willing to accept the petitioner for his federal sentence.

If specific performance is an impossibility, the parties should enter into new plea negotiations taking into account the intentions of the failed plea agreement. The agreement failed through no fault of the petitioner. In our view, plea negotiations and sentencing should take into account the time the petitioner has served in prison and in the county jail. If these avenues do not provide a satisfactory resolution, the petitioner may be allowed to withdraw his guilty pleas altogether and face trial.

Id. at *7.

## CONCLUSION

Based on the foregoing authorities and reasoning, we reverse the judgment of the post-conviction court and remand for proceedings consistent with the avenues of relief proposed

-10-

by this court in <u>Derrick E. Means</u>, 1998 WL 470447, and adopted by this panel.


_____
ALAN E. GLENN, JUDGE